**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **JASON FRAZIER** and **EARL FERGUSON,** | |
| *Plaintiffs*, | |
| v. | |
| **FULTON COUNTY DEPARTMENT OF REGISTRATION AND ELECTIONS,** | |
| **SHERRI ALLEN, AARON JOHNSON, MICHAEL HEEKIN,** and **TERESA K. CRAWFORD**, individually, and in their official capacities as Members of the Fulton County Department of Registration and Elections, | Civil Action No.: |
| **KATHRYN GLENN**, individually, and in her official capacity as Registration Manager of the Fulton County Department of Registration and Elections, | **COMPLAINT FOR DECLARATORY JUDGMENT AND APPLICATION FOR WRIT OF MANDAMUS AND INJUNCTIVE RELIEF** |
| **BRAD RAFFENSPERGER**, in his official and individual capacities, | |
| *Defendants*. | |

## <u>INTRODUCTION</u>

*"Fulton County <u>never</u> conducts an independent search for anybody; dead people, felons, people who live out of state."*[1]

— Chair, Fulton County Department of Registration and Elections

---

[1] Jason Frazier, X (formerly "Twitter") (Nov. 15, 2023), available at https://t.ly/kUaQM (last accessed Aug. 14, 2024).

The above-statement captures the overall basis upon which this action is filed: Fulton County does not maintain, nor does it even attempt to maintain, accurate voter rolls. Just months ago during an on-record Fulton County Board of Commissioners hearing, questions were asked to the Chair of the Fulton County Department of Registration and Elections ("FCDRE") concerning whether the FCDRE was fulfilling its lawfully compelled and non-discretionary duties regarding voter list maintenance. When asked whether ineligible voters were being removed from the voter roll, FCDRE's Chair admitted that "Fulton County never conducts an independent search for anybody; dead people, felons, [or even] people who live out-of-state."[2]

This admission indisputably runs afoul of well-established federal law that *inter alia* requires the FCDRE to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters"[3] from Fulton County's voter roll, and "never conduct[ing] an independent search for anybody" on Fulton County's voter roll also violates the express, non-discretionary duty imposed on the FCDRE under Georgia state law, which states in pertinent part:

> The board of registrars of [Fulton] county . . . **shall** be charged with the duty of examining from **time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors  . . . ."[4]

There is no question that this is a mandatory duty; one of which is expressly stated in the text of the statute itself. But Fulton County does not care, and has openly flouted its flagrant violations, which as explained in greater detail below, extend beyond words and manifest in practice, as Plaintiff Jason Frazier has experienced, first-hand.

On August 4, 2024, and in light of FCDRE's open admission to not maintaining accurate voter rolls, Mr. Frazier submitted a voter roll challenge to contest the continued inclusion of certain electors who are no longer eligible to vote in Fulton County. Under Georgia state law, Mr. Frazier,

---

[2] *Id.*
[3] 52 U.S.C. § 20507(a)(4).
[4] O.C.G.A. § 21-2-228(a) (emphasis added).

a resident and eligible, registered elector of Fulton County, submitted a challenge pursuant to his right to do so under O.C.G.A. § 21-2-229(a). He also ensured irrefutable evidence proving the ineligibility of each challenged voter accompanied his challenge. In doing so, Mr. Fraizer's challenge submission triggered yet another mandatory, non-discriminatory duty compelled under O.C.G.A. § 21-2-229(b), which requires the FCDRE to provide Mr. Frazier with notice of a hearing date within ten business days of August 4, 2024—the date on which the FCDRE received Mr. Frazier's 229(a) challenge, but as of the date of this filing, the FCDRE continues to violate its obligation to respond.

In addition to Fulton County's (1) failure to have and use a "general program that makes a reasonable effort to remove ineligible voters" as required under the National Voter Registration Act ("NVRA"); the FCDRE's (2) refusal to comply with the duty under state law that states the FCDRE "**shall** examin[e] from time to time the qualifications of each elector of the county"; and (3) the FCDRE's failure to comply with its notice-related obligations under 229(b),  Fulton County has even violated regulations that the FCDRE itself adopted and implemented.

The fourth and final basis upon which this action is filed arises under the Supremacy Clause to the United States Constitution and the conflict that exists between Fulton County and Georgia's regulations concerning 229(a) challenges. These regulations, inspired and brought about by Secretary of State Raffensperger and adopted by all Defendant Raffensperger's co-Defendants named in this action, conflict with well-settled federal law and the rights afforded under the United States Constitution, including the fundamental right to Equal Protection and the fundamental right to vote.

Specifically, the regulation at issue here is Fulton County's *Procedures for Responding to Voter Challenges Submitted Pursuant to O.C.G.A. § 21-2-229,* which *inter alia* adopts the NVRA and its provisions regarding the prohibition that bars the removal of voters within 90 days of a

federal election when the ineligible voters that should be removed are identified through the government's use of a state-ran or state-conducted systemic voter removal program. *See* 52 U.S.C. § 20507(c)(2)(A).

The issue here is that Defendants, as a direct and proximate result of their communications with Defendant Raffensperger, have conspicuously taken the NVRA's aforesaid 90-day "quiet period" and transposed the prohibition against removing ineligible voters identified *by a state ran and operated systemic voter removal program* and placed the prohibition upon any voters identified by a *challenger's* use of a program that he or she uses in the 229(a) challenge submission process.

In other words, Secretary Raffensperger has falsely advised and/or instructed that federal law (NVRA) prohibits county election officials in Fulton County and throughout Georgia's remaining 158 other counties from removing voters within 90 days of a federal election if the ineligible voters identified by a 229(a) challenge were found to be ineligible based upon a challenger's use of a program. But this is not what the NVRA says, and in the case of Plaintiff Earl Ferguson ("Mr. Ferguson"), this is the precise basis upon which his 229(a) challenge was rejected.

In light of the above, and as further explained below, Plaintiffs hereby allege and assert the forthcoming allegations in support of their Complaint for Declaratory and Injunctive Relief and Application for Writ of Mandamus[5] to obtain an order declaring Defendants have violated well-settled federal and state law; to enjoin Defendants from further violating state and federal law, and to compel by way of mandamus relief each Defendant named in this action to fulfill their express, non-discretionary duties as public elections officials in the State of Georgia, as follows:

---

[5] Plaintiffs/Petitioners are cognizant of Federal Rule of Civil Procedure 81(b) which abolished mandamus actions in United States District Court, but nonetheless authorizes "relief previously available through [writs of mandamus] by appropriate action or motion under these rules." Fed. R. Civ. P. 81(b). Plaintiffs/Petitioners herein are seeking relief via the All Writs Act and an Action to Compel a United States Officer to Perform His/Her Duty pursuant to 28 § 1361.

**PARTIES**

1.      Plaintiff Jason Frazier is an adult resident and eligible, registered voter in Fulton County, Georgia.

2.      Plaintiff Earl Ferguson is an adult resident and eligible, registered voter in Fulton County, Georgia. Mr. Ferguson placed the FCDRE on notice that it was acting in violation of the NVRA on or about March 18, 2024, which is more than 90 days ago, and as of the date of this filing, the FCDRE has failed to come into compliance or otherwise correct its violation of the NVRA;

3.      Defendant Fulton County Department of Registration and Elections ("FCDRE") is a political subdivision of the State of Georgia and is responsible for *inter alia* conducting elections for Fulton County registered voters. The Department of Registration and Elections and its members can be served at 141 Pryor Street, SW, Tenth Floor, Atlanta, Georgia 30303.

4.      Defendants Sherri Allen, Aaron Johnson, Michael Heekin, and Teresa K. Crawford are Members of the Fulton County Department of Registrations and Elections. They are sued in their individual and official capacities and can be served at 141 Pryor Street, SW, Tenth Floor, Atlanta, Georgia 30303.

5.      Defendant Kathryn Glenn is the Registration Manager for the Fulton County Department of Registration and Elections.

6.      Defendant Brad Raffensperger is Georgia's Secretary of State and he is responsible for *inter alia* promulgating policies and procedures across Georgia that include inaccurate, erroneous, and false statements of law that have resulted in counties, including Fulton County, adopting policy revisions that run afoul of state and federal law, including without limitation, 52 U.S.C. §§ 20507 *et seq.*,  O.C.G.A. §§ 21-2-228, *et seq.*, § 21-2-229 *et seq.*, and  § 21-2-230, *et*

*seq.* Defendant Raffensperger is sued in his individual and official capacities, and he may be served at the Office of the Secretary of State, 214 State Capitol, Atlanta, Georgia 30334.

## JURISDICTION & VENUE

7.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides for federal question jurisdiction over cases arising under federal law and the Constitution of the United States.

8.      This Court also has jurisdiction over this action pursuant to 42 U.S.C. § 1343(a)(4) because it is an action seeking to secure equitable relief under an Act of Congress that provides for the protection of civil rights, including the fundamental civil right to vote.

9.      This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, in that the facts are so closely related to the facts underlying Plaintiff's federal claims as to satisfy the "same case or controversy" requirement set forth under Article III of the United States Constitution.

10.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

11.     This Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented under Fed. R. Civ. P. 57.

## STATEMENT OF FACTS

12.     The National Voter Registration Act ("NVRA") imposes an express, non-discretionary duty upon the FCDRE to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence. 52 U.S.C. § 20507(a)(4).

13.     Georgia state law also imposes a similar express, non-discretionary duty; under O.C.G.A. § 21-2-228(a), "[t]he board of registrars of [Fulton] county . . . **shall** be charged with the

6

duty of examining from time to time the qualifications of each elector of the county or municipality whose name is entered upon the list of electors . . .".

14.    Despite these well-established federal, state, and local duties, the FCDRE admitted, during an official Fulton County Board of Commissioners hearing, that "Fulton County never conducts an independent search for anybody; [not even] dead people, felons, [or] people who live out of state."[6]

15.    The FCDRE has also acted in a manner consistent with this admission on numerous occasions.

16.    For example, during an FCDRE on-record meeting conducted on August 8, 2024, an inquiry was made into whether any voter roll challenges were pending as of that date.

17.    Defendant Kathryn Glenn responded to the aforesaid inquiry with a resounding, "No." Defendant Glenn further stated the last voter roll challenge the FCDRE received was on "December 4, [2023]."

18.    Both statements—that no voter roll challenge was pending as of August 8, 2024, and that the FCDRE had not received any voter roll challenges had been received since December 4, 2023—are provably false.

19.    Specifically, Mr. Frazier submitted a 229(a) voter roll challenge on August 4, 2024, and the FCDRE received his 229(a) challenge that same day.

20.    From August 4, 2024, through August 8, 2024 (and well-beyond thereafter), the FCDRE did not resolve the challenge, remove the voters identified in the challenge from Fulton County's voter roll, or otherwise respond to Mr. Frazier's voter roll challenge.[7]

---

[6] *See supra*, fn. 1.

[7] The FCDRE never fulfilled its express, non-discretionary duty to provide notice in accord with the provisions set forth under O.C.G.A. § 21-2-229(b).

21.     Due to the receipt of Mr. Frazier's 229(a) voter roll challenge on August 4, 2024, and the failure to resolve this challenge at any time prior to making the aforesaid statements on August 8, 2024, two things are certain: ***first,*** Mr. Frazier's 229(a) challenge was pending at all times relevant, including at the time Defendant Glenn lied and stated the contrary; and ***second***, the FCDRE had received one or more voter roll challenges since "December 4, [2023]."

22.     Defendant Glenn knowingly made false statements concerning voter roll challenges, and her statements are consistent with the FCDRE's admission that "Fulton County never conducts independent search[es] for anybody."[8]

23.     Indeed, had the FCDRE fulfilled its obligations under 52 U.S.C. § 20507(a)(4) and O.C.G.A. § 21-2-228(a), Mr. Frazier would not have been able to submit a 229(a) challenge that included the names of ineligible voters who remain listed on Fulton County's voter roll—nor would he have been able to satisfy his burden of proof by providing indisputable evidence of each identified individual's ineligibility contemporaneously with his challenge submission.

24.     Mr. Frazier's aforementioned 229(a) challenge and the evidence proving the individuals identified in his challenge were ineligible was received by the FCDRE on August 4, 2024.

25.     Upon receiving Mr. Frazier's 229(a) challenge on August 4, 2024, the FCDRE had an express, non-discretionary duty to provide Mr. Frazier with notice of a hearing date ***within ten business days***—which here, required said notice to be tendered on or before August 16, 2024.

26.     Specifically, O.C.G.A. § 21-2-229(b), states in pertinent part, the FCDRE:

> [S]hall set a hearing on such challenge within ten business days" and notice of the hearing "shall be served upon . . . the elector making the challenge [(which here, is the Plaintiff)] ***within ten business days*** following the filing of the challenge.[9] Such notice shall be served either by first-class mail addressed to

---

[8] See *supra*, fn 1.
[9] *Id.*

the mailing address shown on the person's voter registration records or in the manner provided in subsection (c) of Code Section 21-2-228.

27.     Subsection (c) of Code Section 21-2-228 states:

The sheriff, any deputy sheriff, or any lawful constable of such county or peace officer of such municipality shall serve all summonses, notices, and subpoenas issued by such registrars and placed in the hands of any such official. Such official shall receive such compensation as is provided for like services in the superior court. In case of the refusal of any person subpoenaed to attend or testify, such fact shall be reported immediately by the registrars to the appropriate superior court, or to a judge thereof, and such court or judge shall order such witness to attend and testify; and, on failure or refusal to obey such order, such witness shall be dealt with as for contempt. Any witness so subpoenaed, and after attending, shall be allowed and paid the same mileage and fee as allowed and paid witnesses in civil actions in the superior court.

28.     On or about August 20, 2024 and four (4) days after the requisite notice was required to be tendered under O.C.G.A. § 21-2-229(b), the FCDRE confirmed in writing to Mr. Frazier that it had violated Georgia state law, conceding that it had not mailed or otherwise provided him with the notice as required by statute, as evidenced below:

**From:** Ann S. Brumbaugh <ab@annbrumbaughlaw.com>
**Sent:** Tuesday, August 20, 2024 9:30 AM
**To:** Glenn, Kathryn <Kathryn.Glenn@fultoncountyga.gov>; jasonfrazierusa@yahoo.com
**Cc:** Williams, Nadine <Nadine.Williams@fultoncountyga.gov>; Eskridge, Patrick <Patrick.Eskridge@fultoncountyga.gov>; Bodison, Mariska <Mariska.Bodison@fultoncountyga.gov>; Allen, Sherri <Sherri.Allen@fultoncountyga.gov>; Alexis, Chad <Chad.Alexis@fultoncountyga.gov>
**Subject:** Re: Residency Challenge 8/4/2024

Per O.C.G.A. 21-2-229(b), the notice must be sent by first class mail.

As a rule of thumb, you should assume that email is never proper notice in legal proceedings.  It is fine to send an email, but it must always be followed up with a mailed notice.

Law Office of Ann S. Brumbaugh LLC
The High House
309 Sycamore Street
Decatur, GA  30030
404-593-8295 (cell)
Annbrumbaughlaw.com

29.     The above-shown communication, which is titled: "**Re: Residency Challenge 8/4/2024**" further confirms that the date of receipt was August 4, 2024.

30.     The above-shown communication further confirms that the 229(a) challenge was submitted based on the residency of the ineligible voters identified; all of whom reside outside of Fulton County, Georgia at all times relevant.

31.     Ten business days from August 4, 2024 is August 16, 2024.

32.     The aforesaid written communications establish the FCDRE, Defendant Glenn, and each of the named FCDRE members sued in this action have violated federal and state law, and even runs afoul of Fulton County's own self-imposed regulations.

33.     By "never conducting an independent search for anybody", the FCDRE has admitted that it does not fulfill its express, non-discretionary duty under the NVRA, which requires the FCDRE to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence. 52 U.S.C. § 20507(a)(4).

34.     Moreover, by "never conducting an independent search for anybody", the FCDRE has admitted that it does not fulfill its express, non-discretionary duty under the O.C.G.A. § 21-2-228(a), states that "[t]he board of registrars of [Fulton] county . . . **shall** be charged with the duty of examining **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors  . . .". (emphasis added).

35.     Third, by "never conducting an independent search for anybody", the FCDRE has admitted that it does not fulfill its express, non-discretionary duty its own self-imposed duty to fulfill the above-mentioned obligation imposed by the NVRA, which was adopted and duly incorporated by reference into the FCDRE's *Procedures for Responding to Voter Challenges Submitted Pursuant to O.C.G.A. § 21-2-229*.

36.     Additionally, the FCDRE's *Procedures for Responding to Voter Challenges Submitted Pursuant to O.C.G.A. § 21-2-229* also contains a regulation that misapplies and

erroneously construes the NVRA's prohibition against the removal of ineligible voters within 90 days of an election.

37.     Under the NVRA, the FCDRE is prohibited from removing ineligible voters from its voter roll if the ineligible voters were identified *by the FCDRE's use* of a systemic voter removal program. *See* 52 U.S.C. § 20507(c)(2)(A).

38.     Specifically, this 90-day "quiet period" pertains expressly to programs *used by Fulton* County; it does not, nor has the NVRA ever, imposed a prohibition against the removal of voters identified in a 229(a) challenge on the basis that a challenger used some sort of program to identify the ineligible voters he or she includes in his or her 229(a) challenge submission.

39.     Despite this, the FCDRE adopted and implemented a regulation that makes clear, the FCDRE will reject challenges lawfully submitted pursuant to the right to do so under O.C.G.A. § 21-2-229(b) on the basis that the FCDRE cannot remove ineligible voters within 90 days of the November 5, 2024 election.

40.     This non-existent basis for rejecting 229(a) challenges exists in the text of the FCDRE's *Procedures for Responding to Voter Challenges Submitted Pursuant to O.C.G.A. § 21-2-229* and is also further made known to exist based on Defendant Glenn's statements admitting Fulton County will unlawfully reject 229(a) challenges.

41.     During the August 8, 2024 FCDRE board hearing, Defendant Glenn falsely and erroneously claimed that Fulton County cannot remove voters based on 229(a) challenges submitted after August 7, 2024. This statement is patently and unequivocally false.

42.     The NVRA provision that prohibits the FCDRE from using a Fulton County-operated program that has a purpose to "systematically remove the names of ineligible voters" from its voter rolls within the last 90 days before a federal election does not prohibit the FCDRE from removing ineligible voters identified by a voter challenge submitted by a Fulton County

eligible elector; indeed, it is unequivocally clear that the 90-day provision *does not* bar the FCDRE from investigating potential ineligible voters identified by voter roll challenges, nor does the NVRA prohibit or otherwise bar the FCDRE from removing ineligible voters identified by a voter roll challenge from the Fulton County voter roll, ***even within the 90-day window***. *See* 52 U.S.C. § 8(c)(2)(A), 42 U.S.C. § 1973gg-6(c)(2)(A) (2013).

43. Despite this, Fulton County adopted the following regulation, which states in pertinent part:

> Pursuant to Section (c)(2)(A) of the NVRA, any systematic list maintenance process shall be completed 90 days prior to the date of a primary or general election for Federal office. This 90-day rule would be applicable, for example, **to a challenge against voters which was created by a data-matching process. . . .**[10]

44. This misapplication of the NVRA's 90-day prohibition has resulted in the rejection and refusal to review or otherwise remove tens, if not hundreds of thousands of ineligible voters that remain on Fulton County's voter roll directly and proximately as a result of the FCDRE's violations of federal law, including without limitation, 52 U.S.C. § 20507(a)(4), 52 U.S.C. § 8(c)(2)(A), 42 U.S.C. § 1973gg-6(c)(2)(A) (2013), as well as Georgia state law, including without limitation, O.C.G.A. § 21-2-228(a), O.C.G.A. § 21-2-229(b), and O.G.C.A. § 21-2-230(b).

45. While the FCDRE adopted, implemented, and enforced the aforesaid unlawful regulation concerning the 90-day prohibition against the removal of ineligible voters, it did not do so without substantial influence from Georgia's Secretary of State, Brad Raffensperger.

46. Specifically, the FCDRE, in part or in whole, adopted the erroneous and misapplied interpretation of the 90-day removal prohibition as a direct and proximate result of its communications with Defendant Raffensperger, who in his official capacity as Secretary of State,

---

[10] FCDRE's *Procedures for Responding to Voter Challenges Submitted Pursuant to O.C.G.A. 21-2-229 and 21-2-230,* at pg. 12 (emphasis added).

has conspicuously taken the NVRA's 90-day "quiet period" applicable to state or county ran and operated systematic removal programs and placed this prohibition upon challengers' use of such program(s).

47.   In other words, the FCDRE adopted this unlawful regulation and non-existent basis for the rejection of otherwise lawfully submitted challenges directly and proximately as a result of its communications with Secretary Raffensperger and the statements, conveyances, and representations, made by him and the Office of Secretary of State.

48.   As a result of the reliance upon the misguided and unlawful directives that either in whole or in part, directly and proximately caused the FCDRE to adopt and employ an unlawful and non-existent basis for the rejection of otherwise lawful voter roll challenges, the FCDRE has rejected, and continues to reject, viable, lawful voter roll challenges submitted in accord with all requirements set forth under O.C.G.A. § 21-2-229(a).

49.   Because no such basis for rejecting a challenge exists under the NVRA and because the FCDRE and Secretary Raffensperger have created or caused to be created, implemented, and applied a policy that infringes upon the fundamental right to vote that arises under the United States Constitution, including the fundamental right to vote, and the Fourteenth Amendment's Equal Protection Clause, Plaintiff and all other Fulton County voters, and all other Georgia Voters, have been deprived and will continue to be deprived of the aforesaid constitutional and civil rights afforded to them under the United States Constitution, federal statutory law, and their statutory right to challenge and have removed from the voter rolls, all ineligible voters identified and challenged as provided for under the laws of this State.

//

//

//

//

## COUNT I
### VIOLATION OF THE NVRA, 52 U.S.C. § 20501, *et seq.*
### (*Frazier and Ferguson against FCDRE, Allen, Johnson, Heekin, Crawford, and Glenn*)

50.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

51.     Congress passed the National Voter Registration Act ("NVRA") pursuant to Article I, Section 8, Clause 18 of the United States Constitution (the "Necessary and Proper Clause").

52.     Under the Necessary and Proper Clause, Congress found that maintaining accurate voter rolls is a necessary condition precedent to upholding the right of the people to choose their representatives. Accordingly, Congress' stated its purpose for enacting the NVRA is to "protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501.

53.     In promulgating the NVRA, Congress found that: (1) the right of citizens of the United States to vote is a fundamental right; (2) it is the duty of the Federal, State, and local governments to promote the exercise of that right.; and (3) discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office. *See* 52 U.S.C. § 20501 *et seq*.

54.     In furtherance of the NVRA's purpose, one means by which the NVRA seeks to protect the integrity of the electoral process is through imposing a non-discretionary duty upon the states that requires each state, including the State of Georgia, to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of address. 52 U.S.C. § 20507(a)(4).

55.     Similarly, the U.S. Election Assistance Commission ("EAC") is required by law to report to Congress its findings related to state voter registration practices. 52 U.S.C. § 20508(a)(3).

56.     Federal regulations also require states, including the State of Georgia to provide data to the EAC for use in the EAC's reports, including data such as (1) the numbers of active voters, and (2) the number of registered voters removed from voter rolls, for any reason. 11 C.F.R. § 9428.7(b)(1), (2), (5).

57.     The NVRA also requires any state-ran or state-operated program that is operated for the purpose of removing ineligible voters to be completed at least 90 days prior to a federal election.

58.     This 90-day provision exclusively applies to programs operated by the states, ran by the states, or otherwise employed by the states. There is no 90-day "quiet period" applicable under the NVRA that pertains to programs of any kind that are utilized by non-state actors, such as citizens or qualified electors of a given county, even those who submit challenges to their county's voter roll.

59.     Here, Jason Frazier and Earl Ferguson are each individually and in their own respects: (1) American citizens; (2) over the age of 18 years; (3) non-felons; (4) residents of Fulton County, Georgia; and (5) registered to vote in Fulton County. Accordingly, Mr. Frazier and Mr. Ferguson are both "qualified electors" or "eligible voters" in Fulton County, Georgia.

60.     At all times relevant, the NVRA was applicable and remains applicable and is in full force and effect against each named Defendant in this action.

61.     The NVRA expressly provides for the private right of action against government election officials and authorizes suits for violations of the NVRA's provisions by private citizens, such as Mr. Frazier and Mr. Ferguson.

62.     To bring a private cause of action, notice is sometimes required; however, the curing period a violating defendant must correct its action and become compliant with the NVRA depends on the date on which the violation occurs.

63.     To satisfy the NVRA's notice requirement, a person must notify the chief election official of the State involved: (1) 90 days prior to the commencement of a federal action if the violation occurs more than 120 days prior to a federal election and is not corrected within 90 days after receipt of the notice; or (2) in the event the violation occurs within 120 days of the federal election, notice need only be sent 20 days prior to the commencement of a federal action if the violation is not corrected within that 20-day grace period. Should any violation occur within 30 days prior to a federal election taking place, the notice requirement is vacated, and a federal action may be commenced immediately.

64.     The NVRA grants this Court the authority to redress violations of the NVRA by way of declaratory or injunctive relief. This means that this Court has the lawful and express statutory authority to formally order Defendants, including the FCDRE and Secretary Raffensperger as well as every other election official named in this action, to correct course and resolve its actions that run contrary to the obligations and requirements set forth under the NVRA.

65.     This authority even extends the authority to this Court to decertify an election even after certification occurs, should such relief be necessary in the interests of justice.

66.     Additionally, under the NVRA, vote dilution constitutes an injury-in-fact sufficient to satisfy the injury prong of Plaintiff's claim.

67.     Defendants the FCDRE, Sherri Allen, Aaron Johnson, Michael Heekin, Teresa Crawford, and Kathryn Glenn (collectively, "Fulton County") violated the express, non-discretionary duty imposed under the NVRA that requires Fulton County to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence. 52 U.S.C. § 20507(a)(4).

68.     Fulton County failed to conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by not having any

program that if used or employed, removes the names of ineligible voters from Fulton County's official eligible voter list, as evidenced by the fact that the FCDRE has admitted that "Fulton County never does an independent search for anybody; dead people, felons; people who live out of state."[11]

69.     To the extent Fulton County does have a general program that makes a reasonable effort to remove the names of ineligible voters from its official list of eligible voters, Fulton County does not employ, conduct, or otherwise employ such a program, as evidenced by the fact that the FCDRE has admitted that "Fulton County never does an independent search for anybody; dead people, felons; people who live out of state"[12] and the fact that had Fulton County conducted such a program, Plaintiffs would not have been able to identify voters on Fulton County's voter roll who are who are ineligible to vote as such program would have, with reasonable effort, identified said voters and removed them from its voter roll.

70.     To the extent Fulton County has and conducts a general program, the goal of which is to remove the names of ineligible voters from its official list of eligible voters, the manner in which Fulton County conducts the aforesaid general program does not rise to the level of what constitutes a making of a "reasonable effort" to remove ineligible voters. This is evidenced by the fact that the FCDRE has admitted that "Fulton County never does an independent search for anybody; dead people, felons; people who live out of state"[13] and the fact that had Fulton County conducted such a program, Plaintiffs would not have been able to identify voters on Fulton County's voter roll who are who are ineligible to vote as such program would have, with reasonable effort, identified said voters and removed them from its voter roll.

---

[11] *See* supra, fn. 1.
[12] *Id.*
[13] *Id.*

71.     By never conducting an independent search for anybody, including those who are dead and those who have moved out-of-state, Fulton County has failed to fulfill its express, non-discretionary duty to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence, and such failure to fulfil the aforesaid duty constitutes a violation of 52 U.S.C. § 20507(a)(4).

72.     As a direct and proximate result of the aforesaid NVRA violation, Plaintiffs are entitled to declaratory relief that holds, as a matter of law, Fulton County has failed to fulfil its obligation under the NVRA, and injunctive relief that enjoins Fulton County from continuing its dereliction of its duty to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters."

<u>**COUNT II**</u>
**VIOLATION OF O.C.G.A. § 21-2-228(a)**
(*Frazier and Ferguson against FCDRE, Allen, Johnson, Heekin, Crawford, and Glenn*)

73.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

74.     O.C.G.A. § 21-2-228(a), imposes an express, non-discretionary duty, which states that "[t]he board of registrars of [Fulton] county . . . **shall** be charged with the duty of examining **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors  . . .". (emphasis added).

75.     The duty O.C.G.A. § 21-2-228(a) imposes upon Defendants FCDRE, Allen, Johnson, Heekin, Crawford, and Glenn is expressly stated as evidenced by a plain reading of the text of the statute itself. The language is unambiguous and clearly sets forth the requirements that the aforesaid Defendants (1) examine, (2) from time to time, (3) each elector (4) whose name is on Fulton County's list of electors.

76.     The duty O.C.G.A. § 21-2-228(a) imposes upon Defendants FCDRE, Allen, Johnson, Heekin, Crawford, and Glenn is a mandatory, non-discretionary duty, as evidenced by the use of the word "shall." This is because "[s]hall' is generally construed as a word of command", *Mead v. Sheffield*, 601 S.E.2d 99, 100 (Ga. 2004), and "[t]he import of the language is mandatory." *State v. Collier*, 612 S.E.2d 281, 283 (Ga. 2005). In other words, the legislative intent that belies the obligations imposed under the statute's use of the word "shall" "precludes any discretion on the part of the officer[s]" who are subject to the statute. *Id.*

77.     The FCDRE has admitted that it "***[N]ever*** conducts an independent search for ***anybody.***"[14]

78.     It is impossible for Defendants, who admittedly "never" conduct an independent search "for anybody" to be in compliance with, and have satisfied, the express, non-discretionary duty that requires, the FCDRE to, at a minimum, examine the qualifications "of ***each*** elector of [Fulton] [C]ounty." O.C.G.A. § 21-2-228(a). (emphasis added).

79.     The FCDRE's admission that it "***never*** conducts an independent search for ***anybody***"[15] is further evidenced in practice, insofar as upon receipt of a voter roll challenge submitted by Mr. Frazier on August 4, 2024, Fulton County ignored his Challenge and failed to provide notice of a hearing date, which necessarily would have required Fulton County to independently search for the ineligible voters identified in Mr. Frazier's Challenge.

80.     Had Fulton County conducted an independent search for electors on Fulton County's official list of voters, Plaintiff would not have needed to, nor could he have, submitted a voter roll challenge as an independent search would have revealed each of the names identified in

---

[14] *Id.*
[15] *Id.*

Mr. Frazier's challenge were indeed, ineligible to vote in Fulton County and therefore, improperly listed on the county's voter roll.

81.     By never conducting an independent search for anybody, not even those who are dead and those who have moved out-of-state, Fulton County has failed to fulfill its express, non-discretionary duty of "examining **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors . . .". *Id.* (emphasis added).

82.     As a direct and proximate result of the aforesaid violation of O.C.G.A. § 21-2-228(a), Plaintiffs are entitled to declaratory relief that holds, as a matter of law, Fulton County has failed to fulfil its obligation under the Georgia State law, and injunctive relief that enjoins Fulton County from continuing its dereliction of its duty requiring the FCDRE to "examin[e] **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors . . .". *Id.* (emphasis added).

## COUNT II
### ALL WRITS ACT RELIEF
### Pursuant to 28 U.S.C. § 1651

83.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

84.     Petitioners seek redress from the constitutional harm brought upon them, and the Georgia electorate at large, by Respondents failure to comply with federal and state election law.

85.     Defendants have not and cannot comply with their non-discretionary duty that requires Defendants to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of address because Defendants do not have or use any such program. 52 U.S.C. § 20507(a)(4).

86.     Defendants have done nothing to comply with their non-discretionary duty that requires Defendants to "conduct a general program that makes a reasonable effort to remove the

names of ineligible voters from the official lists of eligible voters" by reason of death or change of address. 52 U.S.C. § 20507(a)(4).

87.     Alternatively, and to the extent Defendants have done or attempted to do anything to comply with their non-discretionary duty that requires Defendants to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change of address, Defendants have failed to do so in a manner that constitutes a "reasonable effort". 52 U.S.C. § 20507(a)(4).

88.     By failing to comply with the aforementioned duty imposed under 52 U.S.C. § 20507(a)(4), Defendants have particularly failed, and will continue to fail to address the inaccurate Fulton County voter roll that Defendants intend to use in the upcoming federal election.

89.     Defendants have done nothing to fulfill, or to the extent Defendants have done something to fulfill or attempted to fulfill with their express, non-discretionary duty that requires the FCDRE to "examin[e] **from time to time** the qualifications of **each elector** of [Fulton] county . . . whose name is entered upon the list of electors . . .",

90.     By failing to comply with the aforementioned duty imposed under O.C.G.A § 21-2-228(a), Defendants have particularly failed, and will continue to fail to address the inaccurate Fulton County voter roll that Defendants intend to use in the upcoming federal election.

91.     Respondents' inaction and/or failure to act compels Plaintiffs to ask this Court to issue a Writ of Mandamus requiring Defendants to comply with the obligations expressly and non-discretionarily imposed upon Defendants pursuant to 52 U.S.C. § 20507(a)(4) and  O.C.G.A § 21-2-228(a), while giving Defendants a reasonable time within which to bring Fulton County into compliance with the aforementioned federal and state laws in time for the 2024 General Election and all federal elections conducted by the State of Georgia hereafter.

92.     Specifically, Plaintiffs respectfully seek that the Court order Defendants to take steps, both short term and long term, to ensure that the Fulton County voter roll is free of any ineligible voter currently listed on any Fulton County voter roll and that Fulton County do so before the 2024 General Election takes place on November 5, 2024.

93.     This Honorable Court is authorized to issue a writ of mandamus under "The All-Writs Act," 28 U.S.C. § 1651, which grants power to United States Federal Courts and authorizes this Court to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law."

94.     Under binding Supreme Court precedent, the The All-Writs Act is a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of the law.'" *Harris v. Nelson*, 394 U.S. 286 (1969) (All Writs Act mandamus properly used to conduct factual inquiries).

95.     A writ of mandamus is warranted where "(1) no other adequate means exist to attain the relief, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380–81 (2004) (stay granted where law was not likely followed)).

96.     A writ of mandamus is appropriate and necessary to vindicate the rights of citizens (such as Plaintiffs) when a governmental agency (such as the FCDRE) or official (such as Defendants Allen, Johnson, Heekin, Crawford, and Glenn) refuse to perform a ministerial duty to which Plaintiffs have established a clear legal right to have, but because of the aforesaid refusal, is a clear legal right to which Plaintiffs and other citizens have been deprived thereof.

97.     Defendants have acted in a manner that deprives Plaintiffs and other citizens of their clear legal right to have public election officials act in a manner consistent with state law that

22

imposes a non-discretionary duty upon the FCDRE and Defendants Johnson, Heekin, Crawford, and Glenn, to "fulfill its express, non-discretionary duty of "examining **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors  . . ." O.C.G.A. § 21-2-229(a).

98.     A federal court may use all auxiliary writs as aids when it is "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942).

99.     A "ministerial action" is a duty in a particular situation so plainly prescribed as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930); see also Will v. United States, 389 U.S. 90 (1967).

100.     The aforesaid statutory duties imposed under federal and state law are ministerial actions, as such non-discretionary and express duties are so plainly written that there is indeed, no doubt that the action sought to be compelled under this cause of action is action that is commanded of Defendants.

101.     Plaintiffs have no other remedy than a writ of mandamus.

102.     Injunctive and/or declaratory relief is inapplicable or inappropriate in this issue because the harm from the failure to fulfill the aforesaid express, non-discretionary duties can only be redressed by way of a writ of mandamus and compelled state corrective action, which this Court has the authority to order.

103.     The Fulton County voter roll is inaccurate, and Defendants' failure to maintain the Fulton County voter roll violates the safeguards the NVRA and Georgia state law provide to protect against such inaccuracy.

104.     Defendants Allen, Johnson, Heekin, Crawford, and Glenn, as Fulton County election officials, bear the job, duty, and responsibility of ensuring that Fulton County's elections

are administered in accordance with federal and state law, including the laws mentioned above and all other laws enacted to protect the integrity of Georgia's elections, and further protect Plaintiffs and all other citizens from corruption in the election process.

105.    Defendants' failure to follow the law has resulted in or otherwise will result in election outcomes that are untrustworthy. The voting system in its present form cannot be used to produce trustworthy reliable results without the requested judicial intervention.

106.    A writ of mandamus is appropriate in this case because Defendants have failed, and continue to fail, to comply with federal and state laws regarding the integrity of Fulton county's voter roll and elections. It is clear from Defendants' repeated refusal to comply with voluminous federal and state laws, as evidenced above and further explained in this Complaint, that, absent judicial action, Defendants will do nothing to repair the deficiencies complained of here, thereby causing the integrity of Georgia's elections to deteriorate or otherwise cease to exist.

107.    Delegations of authority by the legislature of powers to supervise federal elections to any Defendants pursuant to the legislature's power to regulate federal elections is granted by Article I, Section 4, and as such, Defendants are cloaked with duties and otherwise step into the role of a federal officer by agency or at a minimum, a quasi-federal official insofar as Defendants at all times relevant, are tasked with carrying out duties intended and designed to regulate a federal election.

108.    Ordinary principles of federalism and dual sovereignty are inapplicable because Defendants are tasked with acting in a hybrid role as a federal officer or a quasi-federal officer.

109.    This Court has authority to issue the requested writ of mandamus to compel Defendants to take corrective action to ensure Fulton County is in compliance federal election law and subsequent general elections.

110.     This Court also has the authority to Defendants to take corrective action to ensure Fulton County is in compliance federal election law because Defendants, serving in a capacity as a federal official or quasi-federal official, are vested with duties charged by the U.S. Constitution and the carrying out of federal law in a realm where Congress has asserted its power to "alter" existing Georgia federal election procedures, which Congress has already done in enacting *inter alia* the NVRA and other federal election laws (e.g., Help Americans Vote Act).

111.     "Mandamus will issue against a public official only where the petitioner has demonstrated a clear legal right to relief or a gross abuse of discretion." *Burke Cnty. v. Askin*, 732 S.E.2d 416, 419 (2012) (citation omitted).

112.     By never conducting an independent search for anybody, not even those who are dead and those who have moved out-of-state, Fulton County has failed to fulfill its express, non-discretionary duty of "examining **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors  . . .", Defendants have failed to fulfill an express, non-discretionary duty to which Plaintiffs, as residents and eligible, registered voters of Fulton County, have and continue to hold a clear legal right of relief.

113.     Alternatively, because Plaintiffs are residents and eligible, registered voters of Fulton County, Plaintiffs are entitled to mandamus relief because Defendants' failure to fulfill its express, non-discretionary duty of "examining **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors  . . ." constitutes an abuse of discretion—namely, an abuse by exercising discretion that is non-existent and at all times relevant, discretion that Fulton County does not now, nor has it ever, had available to exercise.

114.     The scope of Plaintiffs' mandamus request is narrow: Plaintiffs seek this Court to order the FCDRE to follow existing federal and state law designed by Congress and the Georgia

legislature to ensure that Georgia's 2024 General Election and subsequent combined federal and state general elections produce reliable results and otherwise refrain from infringing upon the prohibitions against vote dilution and other irregularities and inaccuracies directly and proximately caused by inaccurate voter rolls.

//

//

### COUNT III
#### MANDAMUS RELIEF
#### Pursuant to O.G.C.A § 9-6-20 & O.C.G.A. 21-2-228(a)

115.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

116.    "Mandamus will issue against a public official only where the petitioner has demonstrated a clear legal right to relief or a gross abuse of discretion." *Burke Cnty. v. Askin*, 732 S.E.2d 416, 419 (2012) (citation omitted).

117.    By never conducting an independent search for anybody, not even those who are dead and those who have moved out-of-state, Fulton County has failed to fulfill its express, non-discretionary duty of "examining **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors  . . .", Defendants have failed to fulfill an express, non-discretionary duty to which Plaintiffs, as residents and eligible, registered voters of Fulton County, have and continue to hold a clear legal right of relief.

118.    Alternatively, because Plaintiffs are residents and eligible, registered voters of Fulton County, Plaintiffs are entitled to mandamus relief because Defendants' failure to fulfill its express, non-discretionary duty of "examining **from time to time** the qualifications of **each elector** of the county or municipality whose name is entered upon the list of electors  . . ." constitutes an abuse of discretion—namely, an abuse by exercising discretion that is non-existent

and at all times relevant, discretion that Fulton County does not now, nor has it ever, had available to exercise.

119.    Plaintiffs have no other remedy than a writ of mandamus.

120.    Plaintiff are entitled to mandamus relief by way of a Court order compelling the FCDRE, and Defendants Allen, Johnson, Heekin, Crawford, and Glenn to examine the qualifications of each elector on Fulton County's voter roll and remove *all ineligible voters* from its voter roll before the November 5, 2024 election.

### COUNT IV
### DECLARATORY RELIEF
### Pursuant to O.G.C.A § 9-4-1

121.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

122.    Under the NVRA, the FCDRE is prohibited from removing ineligible voters from its voter roll if the ineligible voters were identified *by the FCDRE's use* of a systemic voter removal program. *See* 52 U.S.C. § 20507(c)(2)(A).

123.    In other words, the NVRA bars the removal of ineligible voters within 90 days of a federal election if the ineligible voters are identified through the government's use of a state-ran or state-conducted systemic voter removal program. *See* 52 U.S.C. § 20507(c)(2)(A).

124.    The NVRA does not, nor has it ever, prohibited the removal of voters identified in a 229(a) challenge, regardless of whether a challenger does or does not use a program to identify the ineligible voters he or she contests.

125.    The FCDRE, by and through the actions, communications, representations, and direction of Secretary Brad Raffensperger, adopted a regulation that misapplies and otherwise runs afoul of the aforesaid NVRA provision concerning the compelled removal of ineligible voters.

126.    The FCDRE and Defendants Allen, Johnson, Heekin, Crawford, and Glenn, as a direct and proximate result of their communications with Defendant Raffensperger, have conspicuously taken the NVRA's aforesaid 90-day "quiet period" and transposed the prohibition against removing ineligible voters and applied this prohibition to justify the FCDRE's refusal to remove ineligible voters identified by a 229(a) challenge if the ineligible voters were identified by way of any *Challenger's* use of a program.

127.    Defendant Raffensperger has falsely advised and/or instructed that federal law (NVRA) prohibits county election officials in Fulton County and throughout Georgia's remaining 158 other counties from removing voters within 90 days of a federal election if the ineligible voters identified by a 229(a) challenge were found to be ineligible based upon a challenger's use of a program. But this is not what the NVRA says, and in the case of Plaintiff Earl Ferguson ("Mr. Ferguson"), this is the precise basis upon which his 229(a) challenge was rejected.

128.    The FCDRE's *Procedures for Responding to Voter Challenges Submitted Pursuant to O.C.G.A. § 21-2-229* and its regulation concerning the above-mentioned 90-day "quiet period" misapplies and erroneously construes the NVRA's prohibition against the removal of ineligible voters within 90 days of an election.

129.    The FCDRE adopted and implemented a regulation that makes clear, the FCDRE will reject challenges lawfully submitted pursuant to the right to do so under O.C.G.A. § 21-2-229(b) on the basis that the FCDRE cannot remove ineligible voters within 90 days of the November 5, 2024 election.

130.    This non-existent basis for rejecting 229(a) challenges exists in the text of the FCDRE's *Procedures for Responding to Voter Challenges Submitted Pursuant to O.C.G.A. § 21-2-229* and is also further made known to exist based on Defendant Glenn's statements admitting Fulton County will unlawfully reject 229(a) challenges.

131.    It is unequivocally clear that the 90-day provision *does not* bar the FCDRE from investigating potential ineligible voters identified by voter roll challenges, nor does the NVRA prohibit or otherwise bar the FCDRE from removing ineligible voters identified by a voter roll challenge from the Fulton County voter roll, ***even within the 90-day window***. *See* 52 U.S.C. § 8(c)(2)(A), 42 U.S.C. § 1973gg-6(c)(2)(A) (2013).

132.    The FCDRE and its Members adopted the following regulation, which states in pertinent part:

> Pursuant to Section (c)(2)(A) of the NVRA, any systematic list maintenance process shall be completed 90 days prior to the date of a primary or general election for Federal office. This 90-day rule would be applicable, for example, **to a challenge against voters which was created by a data-matching process. . . .**[16]

133.    Challenges are submitted by eligble voters, not official capacity election officials acting under color of state law.

134.    This misapplication of the NVRA's 90-day prohibition has resulted in the rejection and refusal to review or otherwise remove tens, if not hundreds of thousands of ineligible voters that remain on Fulton County's voter roll directly and proximately as a result of the FCDRE's violations of federal law, including without limitation, 52 U.S.C. § 20507(a)(4), 52 U.S.C. § 8(c)(2)(A), 42 U.S.C. § 1973gg-6(c)(2)(A) (2013), as well as Georgia state law, including without limitation, O.C.G.A. § 21-2-228(a), O.C.G.A. § 21-2-229(b), and O.G.C.A. § 21-2-230(b).

135.    As a result of the inconsistent interpretations of the NVRA's 90-day "quiet period" provision, Plaintiffs seek declaratory relief that sets forth the correct and accurate meaning of the language contained in 52 U.S.C. § 20507(a)(4), and a declaration that this provision only applies to the state or county's own systematic voter removal programs, and that this provision does *not*

---

[16] FCDRE's *Procedures for Responding to Voter Challenges Submitted Pursuant to O.C.G.A. 21-2-229 and 21-2-230*, at pg. 12 (emphasis added).

apply to any challenger's use of any kind of program in the process of formulating his or her voter roll challenge pursuant to  O.C.G.A. § 21-2-229, *et seq*., or O.C.G.A. § 21-2-230 *et seq.*

### COUNT V
### MANDAMUS RELIEF
### VIOLATION OF O.C.G.A. § 21-2-229(b)

136.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

137.    Mr. Frazier submitted a 229(a) voter roll challenge on August 4, 2024, and the FCDRE received his 229(a) challenge that same day.

138.    From August 4, 2024, through August 8, 2024 (and well-beyond thereafter), the FCDRE did not resolve the challenge, remove the voters identified in the challenge from Fulton County's voter roll, or otherwise respond to Mr. Frazier's voter roll challenge.[17]

139.    Due to the receipt of Mr. Frazier's 229(a) voter roll challenge on August 4, 2024, and the failure to resolve this challenge at any time prior to making the aforesaid statements on August 8, 2024, two things are certain: *first,* Mr. Frazier's 229(a) challenge was pending at all times relevant, including at the time Defendant Glenn lied and stated the contrary; and *second*, the FCDRE had received one or more voter roll challenges since "December 4, [2023]."

140.    Defendant Glenn knowingly made false statements concerning voter roll challenges, and her statements are consistent with the FCDRE's admission that "Fulton County never conducts independent search[es] for anybody."[18]

141.    Indeed, had the FCDRE fulfilled its obligations under 52 U.S.C. § 20507(a)(4) and O.C.G.A. § 21-2-228(a), Mr. Frazier would not have been able to submit a 229(a) challenge that included the names of ineligible voters who remain listed on Fulton County's voter roll—nor

---

[17] The FCDRE never fulfilled its express, non-discretionary duty to provide notice in accord with the provisions set forth under O.C.G.A. § 21-2-229(b).
[18] See *supra*, fn 1.

would he have been able to satisfy his burden of proof by providing indisputable evidence of each identified individual's ineligibility contemporaneously with his challenge submission.

142.    Mr. Frazier's aforementioned 229(a) challenge and the evidence proving the individuals identified in his challenge were ineligible was received by the FCDRE on August 4, 2024.

143.    Upon receiving Mr. Frazier's 229(a) challenge on August 4, 2024, the FCDRE had an express, non-discretionary duty to provide Mr. Frazier with notice of a hearing date *within ten business days*—which here, required said notice to be tendered on or before August 16, 2024.

144.    Specifically, O.C.G.A. § 21-2-229(b), states in pertinent part, the FCDRE:

> [S]hall set a hearing on such challenge within ten business days" and notice of the hearing "shall be served upon . . . the elector making the challenge [(which here, is the Plaintiff)] *within ten business days* following the filing of the challenge.[19] Such notice shall be served either by first-class mail addressed to the mailing address shown on the person's voter registration records or in the manner provided in subsection (c) of Code Section 21-2-228.

145.    Subsection (c) of Code Section 21-2-228 states:

> The sheriff, any deputy sheriff, or any lawful constable of such county or peace officer of such municipality shall serve all summonses, notices, and subpoenas issued by such registrars and placed in the hands of any such official. Such official shall receive such compensation as is provided for like services in the superior court. In case of the refusal of any person subpoenaed to attend or testify, such fact shall be reported immediately by the registrars to the appropriate superior court, or to a judge thereof, and such court or judge shall order such witness to attend and testify; and, on failure or refusal to obey such order, such witness shall be dealt with as for contempt. Any witness so subpoenaed, and after attending, shall be allowed and paid the same mileage and fee as allowed and paid witnesses in civil actions in the superior court.

146.    On or about August 20, 2024 and four (4) days after the requisite notice was required to be tendered under O.C.G.A. § 21-2-229(b), the FCDRE confirmed in writing to Mr.

---

[19] *Id.*

Frazier that it had violated Georgia state law, conceding that it had not mailed or otherwise provided him with the notice as required by statute.

147.     The communication titled: "**Re: Residency Challenge 8/4/2024**" confirms that the FCDRE received Mr. Frazier's challenge on August 4, 2024.

148.     The above-shown communication further confirms that the 229(a) challenge was submitted based on the residency of the ineligible voters identified; all of whom reside outside of Fulton County, Georgia at all times relevant.

149.     Ten business days from August 4, 2024 is August 16, 2024.

150.     The aforesaid written communications establish the FCDRE, Defendant Glenn, and each of the named FCDRE members sued in this action have violated federal and state law, and even runs afoul of Fulton County's own self-imposed regulations.

151.     Plaintiffs have no other remedy than a writ of mandamus.

152.     Plaintiff are entitled to mandamus relief by way of a Court order compelling the FCDRE, and Defendants Allen, Johnson, Heekin, Crawford, and Glenn to comply with Georgia state law and timely notify challengers of their respective hearing dates in strict compliance with O.C.G.A. § 21-2-229(b), and further other that failure to do so in the future may give rise to sanctions and that the individual members of the FCDRE, as well as Defendant Glenn may be, or otherwise shall be held in contempt of court should such failure to comply with the provisions of O.C.G.A. § 21-2-229(b) again.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and provide the following relief:

A.     A Rule Nisi issue commanding Defendants to appear and show cause why the relief demanded herein should not be granted.

B.      A declaratory judgment that finds, as a matter of law, that the FCDRE and its Members have violated their lawful, express, and non-discretionary duties imposed by 52 U.S.C. § 20507(a)(4);

C.      A writ of mandamus compelling the FCDRE and its Members to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence as required by 52 U.S.C. § 20507(a)(4) and that they do so prior to the 2024 General Election on November 5, 2024;

D.      A declaratory judgment that the FCDRE and Defendants Allen, Johnson, Heekin, and Crawford failed to fulfil their lawful, express, non-discretionary duty pursuant to O.C.G.A. § 21-2-228(a);

E.      A writ of mandamus compelling the FCDRE and Defendants Allen, Johnson, Heekin, and Crawford to fulfill their lawful, express, and non-discretionary duties under O.C.G.A. § 21-2-228(a) by "examining [prior to the November 5, 2024 General Election] the qualifications of each elector of the county or municipality whose name is entered upon the list of electors  . . ."

F.      A declaratory judgment that the FCDRE and Defendants Allen, Johnson, Heekin, and Crawford failed to fulfil their lawful, express, and non-discretionary duty pursuant to O.C.G.A. § 21-2-229(b);

G.      A writ of mandamus compelling the FCDRE and Defendants Allen, Johnson, Heekin, and Crawford to fulfill their lawful, express, and non-discretionary duties under O.C.G.A. § 21-2-229(b) by way of ensuring the FCDRE "set[s] a hearing on [any 229(a)] challenge within ten business days" and also serves notice of the hearing "upon . . . the elector making the challenge *within ten business days* following the filing of the challenge . . . [and further requiring that] [s]uch notice be served either by first-class mail addressed to the mailing address shown on the person's voter registration records or in the manner provided in subsection (c) of Code Section 21-2-228

and that they do so now and forever into the future or until a legislative change vitiates this obligation;

      H.      A declaratory judgment holding, as a matter of law, that the NVRA does not impose a 90-day prohibition against the removal of ineligible voters based on any challenger or non-state actor's use of any program in creating or otherwise formulating a lawful voter roll challenge;

      I.      A declaratory judgment holding, as a matter of law, that Defendant Raffensperger has violated his fiduciary duties as a public elected official by misleading and directing county officials, including all Fulton County election officials, to act in a manner inconsistent with what state and federal law expressly dictate.

      J.      A writ of mandamus compelling Defendant Raffensperger to retract any statements, orders, directives, or communications, and further compelling Defendant Raffensperger to refrain from issuing any statements, orders, directives, or communications inconsistent with the findings of this Court or holdings in any Order issued by this Court;

      K.      A writ of mandamus compelling Defendant Raffensperger to issue a statewide directive articulating the proper voter roll challenge and removal procedures consistent with the holdings of this Court, inclusive of the holding that the NVRA does not bar the removal of voters in the 90-day period preceding an election based on a challenger's use of any program;

      L.      A declaratory judgment that any challenge denied on the basis of the aforesaid misapplication of the NVRA's 90-day "quiet period" be reinstated;

      M.      A writ of mandamus compelling Fulton County to remove any ineligible voter previously challenged and rejected based upon an erroneous misapplication of the non-existent 90-day prohibition window Defendants falsely claimed or continue claiming serves as a justifiable and lawful reason to reject an otherwise lawful 229(a) challenge;

N.      A writ of mandamus compelling the FCDRE to fulfil their express, non-discretionary duty pursuant to O.C.G.A. § 21-2-229(b), which states the FDCRE "shall set a hearing on such challenge within ten business days" and notice of the hearing "shall be served upon . . . the elector making the challenge *within ten business days* following the filing of the challenge . . . [and further requiring that] [s]uch notice shall be served either by first-class mail addressed to the mailing address shown on the person's voter registration records or in the manner provided in subsection (c) of Code Section 21-2-228;

O.      A writ of mandamus compelling the FCDRE and its Members to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence;

P.      Award Plaintiffs their reasonable costs and expenses of this action, including attorneys' fees; and

Q.      Any and all further relief to which Plaintiffs may be entitled or that this Honorable Court deems just and proper.

Dated: August 28, 2024

Respectfully submitted,

/s/ *Jordan Johnson*
Jordan Johnson
Georgia Bar No. 673943
BERNARD & JOHNSON, LLC
5 Dunwoody Park, Suite 100
Atlanta, GA 30338
Tel: (404) 477-4755
Fax: (404) 592-9089
alex@justice.law

/s/ *Nicole C. Pearson*
Nicole C. Pearson*
California Bar No. 265350
CITIZEN AG
5601 Palmer Way, Suite D
Carlsbad, CA 92010

Tel: (202) 875-2799
nicole@citizenag.org
*pro hac vice* forthcoming

*Counsel for Plaintiffs*