## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JASON FRAZIER and EARL FERGUSON,<br><br>Plaintiffs,<br><br>v.<br><br>FULTON COUNTY DEPARTMENT OF REGISTRATION AND ELECTIONS, SHERRI ALLEN, AARON JOHNSON, MICHAEL HEEKIN, and TERESA K. CRAWFORD, individually, and in their official capacities as Members of the Fulton County Department of Registration and Elections, KATHRYN GLENN, individually, and in her official capacity as Registration Manager of the Fulton County Department of Registration and Elections, BRAD RAFFENSPERGER, in his official and individual capacities,<br><br>Defendants. | Civil Action No. 24-cv-03819-SCJ |

## PROPOSED INTERVENOR-DEFENDANT NEW GEORGIA PROJECT ACTION FUND'S PROPOSED MOTION TO DISMISS

COMES NOW NEW GEORGIA PROJECT ACTION FUND, by and through its attorneys, and files this Proposed Motion to Dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The basis for the motion is more fully set forth in New Georgia Project Action Fund's accompanying Brief in Support of Proposed Motion to Dismiss.

Dated: September 11, 2024         Respectfully submitted,

**/s/ Adam M. Sparks**
Adam M. Sparks (Ga. Bar No. 341578)
Sada J. Bâby (Ga. Bar No. 307214)
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
One Atlantic Center, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
Email: sparks@khlawfirm.com
Email: baby@khlawfirm.com

Uzoma N. Nkwonta*
Jacob D. Shelly*
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave., Suite 400
Washington, D.C. 20001 Telephone:
(202) 968-4490
unkwonta@elias.law
jshelly@elias.law
mmcqueen@elias.law

Tyler L. Bishop*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
(206) 656-0177
tbishop@elias.law

*Counsel for Proposed Intervenor-Defendant New Georgia Project Action Fund*

*\*Pro Hac Vice Application Forthcoming*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JASON FRAZIER and EARL FERGUSON,

       Plaintiffs,

v.

FULTON COUNTY DEPARTMENT OF
REGISTRATION AND ELECTIONS,
SHERRI ALLEN, AARON JOHNSON,
MICHAEL HEEKIN, and TERESA K.
CRAWFORD, individually, and in their
official capacities as Members of the Fulton
County Department of Registration and
Elections, KATHRYN GLENN, individually,
and in her official capacity as Registration
Manager of the Fulton County Department of
Registration and Elections, BRAD
RAFFENSPERGER, in his official and
individual capacities,

       Defendants.

Civil Action No. 24-cv-03819-
SCJ

**NEW GEORGIA PROJECT ACTION FUND'S BRIEF IN SUPPORT OF
PROPOSED MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................ 1

BACKGROUND ............................................................................ 3

ARGUMENT ................................................................................ 5

I.     Plaintiffs lack standing. ....................................................... 5

       A.     Plaintiffs lack Article III standing. ................................. 5

       B.     Plaintiffs lack statutory standing. ................................. 12

II.    Plaintiffs' requested relief is barred by the NVRA's pre-election list-
       maintenance "quiet period." ................................................ 15

III.   Plaintiffs fail to state a claim. ............................................. 19

       A.     Plaintiffs fail to state a claim under the NVRA. ................ 21

       B.     Plaintiffs fail to state a claim under state law. ................ 23

CONCLUSION ............................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. United States*,
198 F. Supp. 3d 1263 (N.D. Ala. 2016)...............................................................19

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) ........................................................3, 16, 17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................19, 23, 24

*Baker v. Carr*,
369 U.S. 186 (1962)........................................................................................10

*Baker v. City of Madison*,
67 F.4th 1268 (11th Cir. 2023) ........................................................................23

*Beal v. Doe*,
432 U.S. 438 (1977)........................................................................................21

*Bellitto v. Snipes*,
221 F. Supp. 3d 1354 (S.D. Fla. 2016)........................................................2, 13

*Bellitto v. Snipes*,
268 F. Supp. 3d 1328 (S.D. Fla. 2017)......................................................12, 13

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019) ................................................................21, 24

*Bibb County v. Monroe County*,
755 S.E.2d 760 (Ga. 2014) ..............................................................................20

*Black Voters Matter Fund v. Raffensperger*,
508 F. Supp. 3d 1283 (N.D. Ga. 2020)............................................................13

*Bochese v. Town of Ponce Inlet*,
405 F.3d 964 (11th Cir. 2005) ..........................................................................9

*Bowyer v. Ducey*,
    506 F. Supp. 3d 699 (D. Ariz. 2020) ................................................................10

*California v. Texas*,
    593 U.S. 659 (2021) .........................................................................................6

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ........................................................................................14

*In re Checking Account Overdraft Litigation*,
    780 F.3d 1031 (11th Cir. 2015) ........................................................................8

*Fair Fight, Inc. v. True the Vote, Inc.*,
    2:20-cv-0302-SCJ, 2021 WL 12299453 (N.D. Ga. Aug. 17, 2021) ...................9

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (U.S. June 13, 2024) ....................................................................8

*Georgia State Conf. NAACP v. Kemp*,
    841 F. Supp. 2d 1320 (N.D. Ga. 2012) .............................................................11

*Greater Birmingham Ministries v. Sec'y of State for Alabama*,
    105 F.4th 1324 (11th Cir. 2024) ......................................................................12

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) .......................................................................19

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ...................................................................................5, 6, 8

*Lance v. Coffman*,
    549 U.S. 437 (2007) (per curiam) ............................................................7, 8, 11

*Majority Forward v. Ben Hill Cnty. Bd. of Elections*,
    512 F. Supp. 3d 1354 (M.D. Ga. 2021) ............................................................18

*N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*,
    No. 1:16CV1274, 2016 WL 6581284 (M.D.N.C. Nov. 4, 2016) ......................18

*Nicklaw v. Citimortgage, Inc.*,
    839 F.3d 998 (11th Cir. 2016) ........................................................................11

*O'Rourke v. Dominion Voting Sys. Inc.*,
    No. 20-CV-03747-NRN, 2021 WL 1662742 (D. Colo. Apr. 28, 2021) ..............9

*Pub. Int. Legal Found. v. Benson*,
    No. 1:21-CV-929, 2024 WL 1128565 (W.D. Mich. Mar. 1, 2024) ..................21

*Pub. Int. Legal Found. v. Boockvar*,
    370 F. Supp. 3d 449 (M.D. Pa. 2019).................................................................14

*Pub. Int. Legal Found. v. Boockvar*,
    495 F. Supp. 3d 354 (M.D. Pa. 2020)...........................................................20, 22

*Raney v. Allstate Ins. Co.*,
    370 F.3d 1086 (11th Cir. 2004) ........................................................................14

*Scott v. Schedler*,
    771 F.3d 831 (5th Cir. 2014) ....................................................................... 11-14

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..........................................................................................6, 7

*Stevens v. Osuna*,
    877 F.3d 1293 (11th Cir. 2017) ........................................................................20

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ...........................................................................7

*United States v. Gonzalez*,
    520 U.S. 1 (1997).............................................................................................16

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019) .....................................................................6, 11

*Wood v. Raffensperger*,
    981 F.3d 1307 (11th Cir. 2020) ................................................................*passim*

## Statutes and Rules

52 U.S.C. § 20501(b)(1) ..........................................................................................15

52 U.S.C. § 20501(b)(2) ..........................................................................................15

52 U.S.C. § 20507(a) ...........................................................................................23

52 U.S.C. § 20507(a)(3) .......................................................................................15

52 U.S.C. § 20507(a)(4) ................................................................................3, 15, 21

52 U.S.C. § 20507(b) ...........................................................................................15

52 U.S.C. § 20507(c) ...........................................................................................15

52 U.S.C. § 20507(c)(2)(A) ..........................................................................2, 15, 16

52 U.S.C. § 20507(c)(2)(B) ..................................................................................18

52 U.S.C. § 20507(d) .....................................................................................15, 24

52 U.S.C. § 20507(d)(1) .......................................................................................18

52 U.S.C. § 20510(b) .............................................................................................2

52 U.S.C. § 20510(b)(1) .................................................................................12, 14

52 U.S.C. § 20510(b)(3) .......................................................................................12

Ga. Code § 21-2-228 ............................................................................................24

Ga. Code § 21-2-231 ............................................................................................23

Ga. Code §§ 21-2-231–236 ..................................................................................22

Ga. Code § 21-2-233 ............................................................................................23

Fed. R. Civ. P. 12(b)(1) .........................................................................................3

Fed. R. Civ. P. 12(b)(6) .........................................................................................3

**Other Authorities**

Board of Commissioners Meeting, Fulton County Gov. TV at
    2:27:46–2:29:08 (November 15, 2023),
    https://www.youtube.com/watch?v=piU7ZP1T0t8...........................................23

**INTRODUCTION**

In this action, two Georgia voters seek to commandeer the state's election administration processes in the weeks before a presidential election to purge an untold number of registrants from the voter rolls. Specifically, they would have this Court take over the duties of the Secretary of State and the Fulton County Department of Registration and Elections (along with its members and registration manager, "Fulton County"), and require a re-examination of hundreds of thousands of voter qualifications; a series of rapid-fire hearings on state-law voter challenges; a public retraction of official "statements, orders, directives, or communications" regarding election administration; the systematic removal of voters from the registration list; and more. Basic precepts of federal law prohibit this extraordinary imposition on state officials and unsuspecting voters.

First, Plaintiffs lack standing—both under the U.S. Constitution and under the National Voter Registration Act ("NVRA")—to bring their claims. Plaintiffs' alleged concerns about "election integrity" and lawful government action affecting other voters are paradigmatic examples of generalized grievances that cannot meet Article III's injury-in-fact requirement. *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020). And to the extent Plaintiffs premise their claims for relief on infringements of their right to vote through "vote dilution," those claims are

similarly neither concrete nor particularized injuries, *id.*, and the Complaint offers no factual allegations to support any such infringement in any event.

Plaintiffs are also ineligible to seek any relief under the NVRA because they failed to submit the requisite written notice before bringing these claims. *See* 52 U.S.C. § 20510(b). The Complaint alleges in one conclusory sentence that Plaintiff "Mr. Ferguson placed [Fulton County] on notice that it was acting in violation of the NVRA on or about March 18, 2024[.]" Compl. ¶ 2. But the Complaint does not allege that the notice was sent to the appropriate official, that the notice supplied the requisite specificity, or that this action arises out of the deficiencies described in the alleged notice. Indeed, it is impossible that notice provided in March 2024 identified Fulton County's alleged failure to act on voter challenges that were submitted in August 2024, as the Complaint alleges. And there is no allegation that Plaintiff Frazier submitted any notice at all. *Bellitto v. Snipes*, 221 F. Supp. 3d 1354, 1363 (S.D. Fla. 2016) (holding one plaintiff may not "piggyback" on another's notice).

Second, Plaintiffs' requested relief is expressly prohibited by the NVRA. That law prohibits election officials from engaging in efforts to systematically remove voters from the registration rolls—the relief that Plaintiffs seek to compel by court order—within 90 days of an election. 52 U.S.C. § 20507(c)(2)(A). This restriction is crucial to protect voters' rights, the Eleventh Circuit has explained, because "[e]ligible voters removed days or weeks before Election Day will likely not be able

to correct the State's errors in time to vote." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014).

Third, Plaintiffs also fail to state a claim. The Complaint is devoid of allegations to support Plaintiffs' theory that Fulton County has failed or is failing to meet a mandatory duty to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4). Plaintiffs largely rely on an out-of-context quote from the Chair of the Fulton County Board that purports to state that the county "never" conducts "independent" reviews of voter qualifications, but the full quote explains that Fulton County does conduct the reviews that are required by statute, and the Complaint never explains why those procedures are insufficient. Plaintiffs' state-law claims that Fulton County has violated a mandatory duty to examine the qualifications of every voter fail for similar reasons.

In short, because Plaintiffs lack standing, are precluded from receiving their requested relief, and fail to state any viable claim, the Court should dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND

Plaintiffs Jason Frazier and Earl Ferguson are two activists, one of whom, it appears from the Complaint, has challenged the qualifications of Georgia voters for non-residency based on the results of some unspecified "data-matching process."

- 3 -

*See* Compl. ¶ 30 (alleging Mr. Frazier filed voter challenges based on residency), *id.* ¶ 132 (taking umbrage with regulation barring action before federal elections on "a challenge against voters which was created by a data-matching process"). Although Plaintiffs allege that Mr. Ferguson provided some kind of notice to Fulton County about its purported NVRA violations on March 18, 2024, *id.* ¶ 2, the relevant events appear to begin on August 4, 2024, when Mr. Frazier submitted his set of voter challenges to the County, *id.* ¶ 19. Plaintiffs allege that Fulton County "did not resolve the challenge, remove the voters identified in the challenge from Fulton County's voter roll, or otherwise respond to Mr. Frazier's voter roll challenge." *Id.* ¶ 20. The ostensible reason for this inaction appears to be a Fulton County regulation construing the NVRA to bar "any systematic list maintenance process," including in response to voter challenges that were assembled "by a data-matching process," within 90 days of a federal election. *Id.* ¶ 43. Plaintiffs allege that Fulton County adopted this regulation at the behest of Secretary of State Brad Raffensperger. *Id.* ¶ 45.

Dissatisfied with Fulton County's alleged failure to process Mr. Frazier's voter challenges according to Plaintiffs' preferred timetable and with Plaintiffs' preferred results, Plaintiffs have filed a fusillade of claims under state and federal law. In sum, they seek declaratory and mandamus relief requiring Fulton County to conduct a general list maintenance program in advance of the November 5 general

election, *id.* ¶¶ 50–120; declaratory and mandamus relief requiring Fulton County to adjudicate Mr. Frazier's voter challenges in advance of the November 5 election, *id.* ¶¶ 121–52; and miscellaneous relief against Secretary Raffensperger, including a declaratory judgment that the Secretary "violated his fiduciary duties as a public official," a writ of mandamus compelling him "to retract any statements, orders, directives, or communications" inconsistent with Plaintiffs' legal theory; and a writ of mandamus compelling him "to issue a statewide directive articulating" Plaintiffs' beliefs about the proper handling of voter challenges. *Id.* Prayer for Relief ¶¶ I, J, K.

## ARGUMENT

### I.   Plaintiffs lack standing.

This Court lacks jurisdiction to hear Plaintiffs' claims twice over: First, Plaintiffs have not alleged a cognizable injury-in-fact and therefore lack Article III standing. Second, Plaintiffs have failed to provide the written notice required by the NVRA to bring claims under that statute.

#### A.   Plaintiffs lack Article III standing.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To establish standing to bring a claim under Article III of the U.S.

Constitution, Plaintiffs must allege that they have suffered "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Prudential considerations require "that a party . . . must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski*, 543 U.S. at 129 (citation omitted). And Plaintiffs must establish Article III standing for each claim for relief that they assert. *E.g.*, *California v. Texas*, 593 U.S. 659, 660 (2021) (explaining that "just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement"); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) ("Article III's standing requirements apply to state-law claims brought in federal court.").

Here, the Complaint states that Plaintiffs are "adult resident[s] and eligible, registered voter[s] in Fulton County." Compl. ¶¶ 1, 2; *see also* ¶ 59. Plaintiffs allege, apparently in support of all of their claims for relief, that they "and all other Fulton County voters, and all other Georgia Voters" have been "deprived" of the right to vote "afforded to them under the United States Constitution [and] federal statutory law." *See* Compl. ¶¶ 48, 49, 84. In support of that theory, the Complaint states that Defendants' alleged actions and inactions will cause "election outcomes that are untrustworthy" and "the integrity of Georgia's elections to deteriorate," *id.* ¶¶ 105,

106, as well as "vote dilution," *id.* ¶¶ 66, 114. The Complaint further alleges that Plaintiffs have been deprived of "their statutory right to challenge and have removed from the voter rolls" voters that they suspect of being ineligible. *Id.* ¶ 49; *see also id.* ¶ 97 (stating that Fulton County's alleged failure to examine every Fulton County voter's eligibility "deprives Plaintiffs and other citizens of their clear legal right to have public election officials act in a manner consistent with state law").

These threadbare allegations are woefully inadequate even to "allege the 'first and foremost of standing's three elements': an injury in fact." *Wood*, 981 F.3d at 1314 (quoting *Spokeo*, 578 U.S. at 338). An injury in fact consists of "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020); *Spokeo*, 578 U.S. at 340 (each of these "subsidiary elements" must be satisfied).

Plaintiffs' allegations that they are injured merely because Defendants have not acted in a manner consistent with state and federal law, Compl. ¶¶ 49, 97, amount to no more than abstract, generalized grievances that fail to establish any concrete or particularized injury. *See, e.g.*, *Lance v. Coffman*, 549 U.S. 437 (2007) (per curiam). As the U.S. Supreme Court has now repeatedly explained, concerns that the law "has not been followed" constitute "precisely the kind[s] of undifferentiated, generalized grievance[s] about the conduct of government that [courts] have refused

to countenance." *Id.* at 442; *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (U.S. June 13, 2024) ("[A] citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally."). But that is the only harm that Plaintiffs allege. In fact, the Complaint repeatedly acknowledges that these harms apply not only to Plaintiffs but also to "other Fulton County voters, and all other Georgia voters." Compl. ¶ 49; *see id.* ¶ 84 (alleging harms to "the Georgia electorate at large"), *id.* ¶ 96 (invoking rights of "Plaintiffs and other citizens"), *id.* ¶ 97 (same), *id.* ¶ 104 (requesting protection for "Plaintiffs and all other citizens"); *see also Wood*, 981 F.3d at 1315 (holding defendant failed to establish injury where complaint acknowledged that the alleged violation affected plaintiff the "same way as every other Georgia voter").[1]

Plaintiffs also appear to premise all of their claims on an alleged infringement of their "fundamental right to vote," *id.* ¶ 49, but this theory likewise fails to establish any concrete or particularized injury. The closest the Complaint comes to alleging any impact on that right is the allegation—unsupported by any citation—that "vote

---

[1] To the extent Plaintiffs intend to do so, they may not assert the rights of non-party voters. Bedrock standing principles require that parties assert their own rights, rather than rely on the rights or interests of "other[s]." Compl. ¶¶ 49, 84, 96, 97; *see Kowalski*, 543 U.S. at 129–30; *see also In re Checking Account Overdraft Litigation*, 780 F.3d 1031, 1038–39 (11th Cir. 2015) (explaining that parties can only invoke third-party standing if they allege "a close relationship with the person who actually possesses the right, and [that] the possessor of the right is somehow hindered in his ability to protect his own interests") (citing *Kowalski*, 543 U.S. at 129–304).

dilution constitutes an injury-in-fact sufficient to satisfy the injury prong," *id.* ¶ 66; *see also id.* ¶ 114 (suggesting that Defendants' alleged violations of "federal and state law" "infring[e] upon the prohibitions against vote dilution"). The Complaint, however, is utterly devoid of any allegation indicating how Plaintiffs' votes will be diluted as a result of Fulton County's purported failure to conduct a reasonable list maintenance program under the NVRA, Fulton County's purported failure to "examine" every voter's qualifications, Fulton County's refusal to resolve Plaintiffs' voter challenges, or the application of the systematic voter challenge policy. *See generally* Compl. ¶¶ 50–152. That lack of concreteness in Plaintiffs' allegations is alone fatal to establishing Article III standing. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964 (11th Cir. 2005) ("The plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements.").

More fundamentally, even assuming Plaintiffs had included allegations explaining how Defendants' actions or inactions will cause vote dilution, courts have uniformly rejected Plaintiffs' unsupported claim that vote dilution constitutes an injury-in-fact in these circumstances. Indeed, a "veritable tsunami" of courts across the country, including in this Circuit, have uniformly rejected the theory. *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747-NRN, 2021 WL 1662742, at *9 (D. Colo. Apr. 28, 2021) (collecting cases), *aff'd*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022); *see also Fair Fight, Inc. v. True the Vote, Inc.*, 2:20-cv-0302-

SCJ, 2021 WL 12299453, at *6 n.9 (N.D. Ga. Aug. 17, 2021) (recognizing this "theory of vote dilution is based upon a premise that the Eleventh Circuit and other courts have declined to uphold in other contexts on generalized grievance standing grounds"). That is because, as the Eleventh Circuit has explained, where "no single voter is specifically disadvantaged if a vote is counted improperly, even if the error might have a mathematical impact on the final tally and thus on the proportional effect of every vote," a claimed vote dilution injury is merely "paradigmatic generalized grievance that cannot support standing." *Wood*, 981 F.3d at 1314–15 (citation omitted).

Plaintiffs' generalized vote-dilution theory is fundamentally different in kind from a vote-dilution injury in the redistricting context, where a law minimizes a particular voter's or a group of voters' voting strength *as compared to other voters*. *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, 207–08 (1962); *Wood*, 981 F.3d at 1314 (explaining that vote dilution may be an injury "in the racial gerrymandering and malapportionment contexts" but not where a voter alleges wrongful votes were allegedly counted due to fraud); *accord, e.g.*, *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711 (D. Ariz. 2020) ("As courts have routinely explained, vote dilution is a very specific claim that involves votes being weighed differently and cannot be used generally to allege voter fraud."). To Intervenor's knowledge, no court has recognized Plaintiffs' apparent theory of injury, where the counting of contested

ballots would "dilute" the voting power of all Fulton County voters equally. *Wood*, 981 F.3d at 1314–15.

To the extent Plaintiffs intend to allege an injury-in-fact based on a statutory right under Georgia law to have their voter challenges resolved or to have voters removed from the rolls in their jurisdiction, Compl. ¶¶ 11, 39, 96, 97, 112, 113, 117, 129, such allegations are insufficient as a matter of law. As the Eleventh Circuit has explained, under Article III, "the relevant question is *whether [the plaintiff] was harmed* when th[e alleged] statutory right was violated." *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (emphasis added) (holding that plaintiff lacked standing to assert claims under state law because he did not allege that he sustained a concrete injury); *see also, e.g.*, *Wilding*, 941 F.3d at 1125 (collecting authorities). Here, while Plaintiffs claim violations of their statutory rights under state law, the Complaint—as explained—lacks any allegations explaining how they are harmed in any concrete or particularized manner. *Lance*, 549 U.S. at 442; *Wood*, 981 F.3d at 1315. The same is true to the extent Plaintiffs allege that they have established an injury-in-fact merely by invoking the NVRA's private right of action. *See* Compl. at 4; *id.* ¶¶ 49, 61; *see Scott v. Schedler*, 771 F.3d 831, 837 (5th Cir. 2014) (dismissing properly noticed claim under the NVRA because organization failed to demonstrate injury-in-fact); *see also, e.g.*, *Georgia State Conf. NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1336 (N.D. Ga. 2012) (finding that organization had

standing to bring properly noticed NVRA claim only after finding it established Article III standing).

Because Plaintiffs have alleged no cognizable injury sufficient to satisfy the demands of Article III as to any of their claims for relief, the Complaint should be dismissed in its entirety.

### B.    Plaintiffs lack statutory standing.

In addition to having to satisfy Article III's requirements, a plaintiff seeking to bring a claim under the NVRA must also show that they "provide[d] written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1); *see Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324, 1328 (11th Cir. 2024) (characterizing written notice as "a required precursor to any private suit under the [NVRA]"); *Scott*, 771 F.3d at 837 (recognizing that "notice is mandatory"). Litigants are excused from the notice requirement before bringing a civil suit only where the violation occurred "within 30 days before the date of an election for Federal office." 52 U.S.C. § 20510(b)(3). Otherwise, plaintiffs who fail to supply the requisite notice have "failed to meet [their] burden to establish standing to bring suit." *Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1332 (S.D. Fla. 2017). Because the next federal election remains more than 30 days away, no exception to the notice requirement applies here.

Each plaintiff must provide the requisite notice before bringing suit. *See Black Voters Matter Fund v. Raffensperger*, 508 F. Supp. 3d 1283, 1294 (N.D. Ga. 2020) (holding "the aggrieved party that eventually files suit must be the party that provides the notice"); *Bellitto*, 221 F. Supp. 3d at 1363 (holding plaintiff did not provide requisite notice even where she was member of organization that provided notice); *see also Scott*, 771 F.3d at 836 (holding plaintiff could not "piggyback" on notice that he did not submit). The notice must (1) "set[] forth the reasons that a defendant purportedly failed to comply with the NVRA" and (2) "clearly communicate[] that a person is asserting a violation of the NVRA and intends to commence litigation if the violation is not timely addressed." *Black Voters Matter Fund*, 508 F. Supp. 3d at 1293. The notice must describe "exactly what violation or violations have been alleged." *Bellitto*, 268 F. Supp. 3d at 1334. That is, it must not be so "vague" as to deprive election officials of "an opportunity to attempt compliance" before facing suit. *Scott*, 771 F.3d at 836.

Plaintiffs' Complaint fails to allege that they satisfied this notice requirement before commencing litigation. The only relevant allegation states that "Mr. Ferguson placed [Fulton County] on notice that it was acting in violation of the NVRA on or about March 18, 2024, which is more than 90 days ago, and as of the date of this filing, [Fulton County] has failed to come into compliance or otherwise correct its violation of the NVRA." Compl. ¶ 2. The Complaint does not allege that the notice

was "written," as the statute requires, or that it was provided to Secretary Raffensperger, "the chief election official of the State." 52 U.S.C. § 20510(b)(1); *see Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 454 (M.D. Pa. 2019) (dismissing NVRA claim where notice was provided to the Commissioner of the Bureau of Commissions, Elections, and Legislation, but not to the Secretary of the Commonwealth, who is Pennsylvania's chief election official). Nor do Plaintiffs allege that Mr. Frazier provided *any* notice, as he was required to do independently of Mr. Ferguson. In addition to those several deficiencies—each independently fatal—the Complaint does not allege that the notice previewed the alleged deficiencies that form the basis of this suit. Indeed, it is impossible that the notice did so, given that it was allegedly provided in March 2024, five months *before* Mr. Frazier filed the voter challenges that Plaintiffs now complain Fulton County has failed to process. Plaintiffs' "failure to provide notice"—at all, in the case of Mr. Frazier, and sufficiently, in the case of Mr. Ferguson—"is fatal to [their] suit." *Scott*, 771 F.3d at 836.

Once Plaintiffs' NVRA claims are dismissed for failure to provide the requisite notice, only state-law claims will remain. The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *see also Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise [pendent] jurisdiction."). Because Plaintiffs have not alleged any federal-law claims that can survive to trial, the entire Complaint should be dismissed

## II.    Plaintiffs' requested relief is barred by the NVRA's pre-election list-maintenance "quiet period."

The NVRA is federal remedial legislation that requires states to provide simplified, voter-friendly systems for registering to vote. In enacting the NVRA, Congress sought to expand access to the franchise by establishing "procedures that will increase the number of eligible citizens who register to vote" and by making it "possible for Federal, State, and local governments to implement [the NVRA] in a manner that enhances the participation of eligible citizens as voters." 52 U.S.C. § 20501(b)(1)–(2). To further those pro-voter purposes, the NVRA imposes strict restrictions on whether, when, and how a state may remove a voter from its registration rolls. *See id.* § 20507(a)(3)–(4), (b)–(d). Among those restrictions is a prohibition against systematic voter purges within 90 days of any federal election: States must complete "any program the purpose of which is to systematically remove the names of ineligible voters" from the rolls "not later than 90 days prior to the date of a primary or general election for Federal office." *Id.* § 20507(c)(2)(A) (the "90-day quiet period"). That mandate bars Plaintiffs' efforts to compel a reexamination

of the voter rolls and the removal of purportedly ineligible voters for non-residency in advance of the November 5 general election.

The Eleventh Circuit has recognized that the NVRA's use of "the phrase 'any program' suggests that [this provision] has a broad meaning," and "strongly suggests that Congress intended the 90 Day Provision to encompass programs of any kind." *Arcia*, 772 F.3d at 1344; *see also United States v. Gonzalez*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is 'one or some indiscriminately of whatever kind.'"). Here, Plaintiffs request "[a] writ of mandamus compelling the FCDRE and its Members to 'conduct a *general program* that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters.'" Compl., Prayer for Relief ¶ C, O (emphasis added). That "general program" would plainly fall within the NVRA's prohibition against "any program."

The program that Plaintiffs seek would further attempt to remove voters from the registration rolls "systematically." 52 U.S.C. § 20507((c)(2)(A). "Although the statute provides no definition for the word 'systematically' or 'systematic,'" *Arcia*, 772 F.3d at 1344, an examination of "the qualifications of each elector" in Fulton County, Compl., Prayer for Relief ¶ E, would require a "systematic" approach under any understanding of that term. Moreover, *Arcia* recognized that a program aims to "systematically" remove names within the scope of the NVRA where it does "not rely upon individualized information or investigation to determine which names

from the voter registry to remove," and instead employs "a mass computerized data-matching process to compare the voter rolls with other state and federal databases." 772 F.3d at 1344. Here, Plaintiffs have made clear that a "**data-matching process**" is precisely what they seek to impose through their voter challenges. Compl. ¶¶ 43, 132 (emphasis in original).

Finally, it is a matter of simple arithmetic that 90 days before November 5 is August 7. Because August 7 was more than a month ago, the FCDRE is no longer permitted to undertake the systematic removal program "prior to the November 5, 2024 General Election" as Plaintiffs demand. Compl. Prayer for Relief ¶¶ C, E.

Plaintiffs' only attempt to duck the clear statutory language is to allege that the 90-day quiet period does not apply "to programs of any kind that are utilized by non-state actors," such as citizens who submit voter challenges. *Id.* ¶ 58. That is mistaken. Plaintiffs cannot in one breath demand that Fulton County conduct a general list-maintenance program, review the qualifications of every registrant, and act on mass voter challenges compiled by data-matching, and then in the next plead a lack of state action. The 90-day quiet period does not limit the power of private citizens, it is true, but only in the sense that private citizens never have the power to remove voters from the registration rolls in the first place. There is no loophole in the NVRA's voter-protection scheme whereby election officials may systematically remove voters from the rolls for any reason within 90 days of an election if only a

private citizen asks them to. *See Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1369 (M.D. Ga. 2021) (finding likely NVRA violation where county accepted voter challenges "made within 90 days of a federal election"); *N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, No. 1:16CV1274, 2016 WL 6581284, at *7 (M.D.N.C. Nov. 4, 2016) (same).

The scope of the 90-day quiet period is further apparent from its exceptions. *See Arcia*, 772 F.3d at 1345 ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). The NVRA provides that the quiet period does *not* apply, for example, where the state attempts to remove voters from the rolls at the voters' request, by reason of criminal conviction or mental incapacity, or because of the registrant's death. *See* 52 U.S.C. § 20507(c)(2)(B). There is no exception for programs initiated by voter challenges. And Plaintiffs do not purport to limit registration removals to any of the enumerated exceptions. Instead, they seek to remove voters because of their *residency*. *See* Compl. ¶¶ 29, 30, 147, 148. Far from permitting residency-based removals within 90 days of an election, the NVRA imposes *additional* waiting periods—often spanning years— that states must satisfy before cancelling voter registrations on that basis. *See* 52 U.S.C. § 20507(d)(1) (prohibiting residency-based removals where the registrant has not confirmed their residency change in writing, unless the registrant received

official notice from the state and failed to vote in two subsequent general elections for federal office).

Because the NVRA prohibits the relief that Plaintiffs seek, their Complaint must be dismissed.

### III.   Plaintiffs fail to state a claim.

To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility is the key, as the well-pled allegations must nudge the claim across the line from conceivable to plausible." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (internal quotations omitted). "[N]aked assertion[s] devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

In this case, Plaintiffs appear to bring claims for mandamus, injunctive, and declaratory relief under the NVRA and state law. *See* Compl. at 2; *id.* ¶¶ 50–152. To establish a mandamus claim under either federal or state law, Plaintiffs must demonstrate, among other things, a clear right to the relief requested and a clear violation by the defendant of a duty to act. *See Alabama v. United States*, 198 F. Supp. 3d 1263, 1275 (N.D. Ala. 2016) ("mandamus relief is only available if the plaintiff has a clear right to the relief requested (in other words, the defendant must

have a clear duty to act)" and the plaintiff has "no alternative remedies" (citations omitted); *Bibb County v. Monroe County*, 755 S.E.2d 760, 766 (Ga. 2014) (explaining that "[m]andamus is a remedy for improper government inaction—the failure of a public official to perform a clear duty," and petitioners must show "(1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief") (collecting authorities).[2]

As for their claims seeking injunctive and declaratory relief, Plaintiffs must meet a similarly demanding threshold. *See, e.g.*, *Pub. Int. Legal Found. v. Boockvar*, 495 F. Supp. 3d 354, 358 (M.D. Pa. 2020) ("Plaintiff's proffered relief would require Defendant to take the "positive act" of actively removing registered voters from voter rolls. Thus, Plaintiff must bear the "particularly heavy" burden of demonstrating a right to relief that is "indisputably clear.") (quoting *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)); *Stevens v. Osuna*, 877 F.3d 1293, 1312 (11th Cir. 2017) (Plaintiff must request "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts," which would resolve

---

[2] Plaintiffs nakedly assert that they may bring an action for mandamus relief under the "All Writs Act." Compl. at 4 n.5. Plaintiffs also confusingly state that they are pursuing "an Action to Compel a United States Officer to Perform His/Her Duty pursuant to 28 [U.S.C.] § 1361," *id.*, but the Complaint does not name any "United States Officer" for any claim. *See generally* Compl. Even assuming that Plaintiffs have properly invoked the All Writs Act for purposes of a federal mandamus action, the Complaint fails to state a claim for the reasons discussed.

genuinely "adverse legal interests") (citations omitted). None of Plaintiffs' claims entitles them to the relief they seek.

### A.   Plaintiffs fail to state a claim under the NVRA.

Plaintiffs' first request for mandamus, injunctive, or declaratory relief is based on their claim that Fulton County has violated a "nondiscretionary, mandatory" duty under the NVRA to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence. 52 U.S.C. § 20507(a)(4); Compl. ¶¶ 50–82 (Counts I and II). The Complaint, however, fails to identify a violation of any legal duty under the NVRA that entitles Plaintiffs to relief.

While the Complaint's allegations emphasize that the NVRA uses the word "shall," Plaintiffs ignore that the statute also uses the term "reasonable," a prescriptive choice that indicates that the law "confers broad discretion on the States to adopt [their own] standards," so long as they are "reasonable." *See, e.g.*, *Beal v. Doe*, 432 U.S. 438, 444 (1977); *Pub. Int. Legal Found. v. Benson*, No. 1:21-CV-929, 2024 WL 1128565, at *10 (W.D. Mich. Mar. 1, 2024) (explaining that "Congress did not establish a specific program for states to follow for removing ineligible voters"); *Bellitto v. Snipes*, 935 F.3d 1192, 1203 (11th Cir. 2019) ("[T]he statute requires nothing more of the state."). The Complaint does not even mention the several *mandatory* list-maintenance procedures that are required by state law, much

less explain why Fulton County's execution of them fails to satisfy the NVRA's general list maintenance requirement. *See* Ga. Code §§ 21-2-231–236; *see generally* Compl. But without "specific" allegations to explain why Fulton County's use of these list maintenance procedures is not "reasonable," this court cannot determine whether "the many procedures currently in place" are insufficient under the NVRA. *Pub. Int. Legal Found. v. Boockvar*, 495 F. Supp. 3d at 359.

Nor does the Complaint's citation to an out-of-context quote from the Chair of the Fulton County Department of Registration and Elections render plausible the claim that Fulton County is not conducting a reasonable general list maintenance program. Compl. ¶¶ 14, 22, 33, 34, 35, 68, 69, 70, 71, 79, 81, 112, 117, 140 (quoting Chair stating at a meeting that the office "never conducts an independent search for anybody; dead people, felons, people who live out of state"). Plaintiffs' Complaint fails to include the rest of the quote:

> The Secretary of State's office sends Fulton County a daily list of issues. People are dead and need to be removed. People are felons and need to be removed. It is our obligation once we receive that to send a notice, even to the dead people, to let them know. And we found a live person who the Secretary of State had reported dead, and the person came to the hearing and said, 'What do you mean, I'm not dead.' We don't have the right to remove anybody's privilege to vote without a hearing . . . . We are systemically following the process [under state law].

Board of Commissioners Meeting, Fulton County Gov. TV at 2:27:46–2:29:08 (November 15, 2023), https://www.youtube.com/watch?v=piU7ZP1T0t8.[3] Thus, the entire edifice of Plaintiffs' Complaint was constructed on a misrepresentation. Fulton County has not disclaimed any effort at list maintenance, as Plaintiffs insist on the basis of this single remark. Rather, Fulton County has expressly *confirmed* its participation in the general list maintenance program that the NVRA and state law require. *See* 52 U.S.C. § 20507(a); Ga. Code §§ 21-2-231, 21-2-233. Plaintiffs do not allege that Fulton County is failing to remove the names of ineligible voters identified by the State, and they cannot allege any state or federal requirement for a different approach to list maintenance. Because Plaintiffs have failed to identify a violation of any law—much less the failure to comply with a specific legal duty that entitles them to the extraordinary relief that they seek—the Complaint should be dismissed. *See Ashcroft*, 556 U.S. at 678.

> **B.**       **Plaintiffs fail to state a claim under state law.**

Plaintiffs' claims for injunctive, mandatory, and declaratory relief based on Fulton County's purported failure to comply with a state law duty to "examin[e]" the qualifications of each of elector in the county fails for similar reasons. *See* Compl. ¶¶ 73–120 (Counts II, III). The full state-law provision states that "[t]he

---

[3] While Plaintiffs cite only to a misleading clip of the proceeding on Twitter, *see* Compl. at 1 n.1, public documents cited by plaintiffs in a complaint are incorporated by reference. *E.g.*, *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023).

board of registrars of each county or municipality shall have the right and shall be charged with the duty of examining from time to time the qualifications of each elector of the county or municipality whose name is entered upon the list of electors." Ga. Code § 21-2-228. Like the NVRA, this provision of state law does not mandate any specific examination or timeframe in which the examination must be conducted, and Plaintiffs fail to identify any specific legal duty that Fulton County is allegedly shunning.

In further support of these state-law claims, the Complaint also alleges that "[h]ad Fulton County conducted an independent search for electors on Fulton County's official list of voters, Plaintiffs would not have needed to" submit challenges because an "independent search would have revealed each of the names identified" in their systematic data matching process, Compl. ¶ 80. But again, this conclusory allegation fails to move the needle; as noted, the NVRA itself contemplates maintaining the names of voters who have moved or otherwise become ineligible for up to four years. *E.g.*, *Bellitto*, 935 F.3d at 1207; 52 U.S.C. § 20507(d). In other words, Plaintiffs' allegations are entirely consistent with lawful conduct— meaning that they have not pleaded a "plausible" claim. *See Ashcroft*, 556 U.S. at 680.

Finally, Plaintiffs' claims seeking mandamus and declaratory relief against the Secretary for "misleading and directing county officials . . . to act in a manner

inconsistent with what state and federal law expressly dictate," Compl., Prayer for Relief ¶ I; *see id.* ¶¶ 121–135 (Count IV), as well as mandamus and declaratory relief pertaining to Fulton County's failure to conduct hearings and resolve their alleged voter challenges, *see id.* ¶¶ 136–152 (Count V), also fail as a matter of law because Plaintiffs have not identified any acts that are inconsistent with the NVRA or state law. *Supra* Section II.

Because Plaintiffs' Complaint states no viable claim upon which relief can be granted, the Complaint should be dismissed.

## CONCLUSION

For these reasons, NGPAF respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice and enter judgment for Defendants.

Dated: September 11, 2024          Respectfully submitted,

<div style="margin-left: 40%;">

**/s/ Adam M. Sparks**
Adam M. Sparks (Ga. Bar No. 341578)
Sada J. Bâby (Ga. Bar No. 307214)
**Krevolin & Horst, LLC**
1201 W. Peachtree St., NW
One Atlantic Center, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
Email: sparks@khlawfirm.com
Email: baby@khlawfirm.com

</div>

Uzoma N. Nkwonta*
Jacob D. Shelly*
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue, Suite 400
Washington, D.C. 20001
(202) 968-4490
unkwonta@elias.law
jshelly@elias.law
mmcqueen@elias.law

Tyler L. Bishop*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
(206) 656-0177
tbishop@elias.law

*Counsel for Proposed Intervenor-Defendant*

*\*Pro Hac Vice Application Forthcoming*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, the undersigned counsel hereby certifies that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C. This document was prepared on a computer using Times New Roman font (14 point).

This 11th day of September 2024.

**/s/ Adam M. Sparks**
Adam M. Sparks
*Counsel for Proposed Intervenor-Defendant*